# EXHIBIT 1

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

|  |  |
|---|---|
| CRYSTAL BRAY and SAMUEL COOK, on behalf of themselves and all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) CASE NO.:   17-cv-01365-JEJ ) |
| vs. | ) ) |
| GAMESTOP CORPORATION, | ) ) |
| Defendant. | ) ) ) |

## SETTLEMENT AGREEMENT

This Settlement Agreement, dated as of July 16, 2018, is made and entered into by and among the following Settling Parties (as defined below): (i) Crystal Bray and Samuel Cook ("Representative Plaintiffs"), individually and on behalf of the Settlement Class (as defined below), by and through their counsel at Chimicles & Tikellis LLP and Abington Cole + Ellery (together, "Proposed Co-Lead Settlement Class Counsel" or "Class Counsel"); and (ii) Gamestop Corporation ("GameStop"), by and through its counsel of record, Paul Karlsgodt of Baker & Hostetler LLP and Ed McAndrew of Ballard Spahr.  The Settlement Agreement is subject to Court approval and is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined below), upon and subject to the terms and conditions hereof.

## I.     THE LITIGATION

From on or about August 10, 2016 to February 9, 2017, GameStop was the victim of a criminal cyberattack in which criminals accessed its computer systems (the "Security Incident").

GameStop conducted an investigation and found no actual evidence of unauthorized access to payment card data. However, investigation revealed that unauthorized access to payment card data from transactions made through www.gamestop.com could have been technically possible. Subsequently, this lawsuit was filed asserting claims against GameStop relating to the Security Incident.

Pursuant to the terms set out below, this Settlement Agreement provides for the resolution of all claims and causes of action asserted, or that could have been asserted, against GameStop and the Released Persons (as defined below) relating to the Security Incident, by and on behalf of Representative Plaintiffs and Settlement Class Members (as defined below), and any other such actions by and on behalf of any other consumers and putative classes of consumers originating, or that may originate, in jurisdictions in the United States against GameStop relating to the Security Incident (collectively, the "Litigation").

## II.   CLAIMS OF REPRESENTATIVE PLAINTIFFS AND BENEFITS OF SETTLING

Representative Plaintiffs believe the claims asserted in the Litigation, as set forth in the Complaint, have merit. Representative Plaintiffs and Proposed Co-Lead Settlement Class Counsel recognize and acknowledge, however, the expense and length of continued proceedings necessary to prosecute the Litigation against GameStop through motion practice, trial, and potential appeals. They have also taken into account the uncertain outcome and risk of further litigation, as well as the difficulties and delays inherent in such litigation. Proposed Co-Lead Settlement Class Counsel are highly experienced in class action litigation and very knowledgeable regarding the relevant claims, remedies, and defenses at issue generally in such litigation and in this Litigation. They have determined that the settlement set forth in this Settlement Agreement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

2

III.     DENIAL OF WRONGDOING AND LIABILITY

GameStop denies each and all of the claims and contentions alleged against it in the Litigation. GameStop denies all charges of wrongdoing or liability as alleged, or which could be alleged, in the Litigation. Nonetheless, GameStop has concluded that further conduct of the Litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Settlement Agreement. GameStop also has taken into account the uncertainty and risks inherent in any litigation. GameStop has, therefore, determined that it is desirable and beneficial that the Litigation be settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.

IV.     TERMS OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among Representative Plaintiffs, individually and on behalf of the Settlement Class, Proposed Co-Lead Settlement Class Counsel, and GameStop that, subject to the approval of the Court, the Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice as to the Settling Parties, the Settlement Class, and the Settlement Class Members, except those Settlement Class Members who lawfully opt-out of the Settlement Agreement, upon and subject to the terms and conditions of this Settlement Agreement, as follows:

1.     Definitions

As used in the Settlement Agreement, the following terms have the meanings specified below:

1.1     "Agreement" or "Settlement Agreement" means this agreement.

1.2 "Approved Claims" means Settlement Claims in an amount approved by the Claims Administrator or found to be valid through the Dispute Resolution process.

1.3 "Claims Administration" means the processing and payment of claims received from Settlement Class Members by the Claims Administrator.

1.4 "Claims Administrator" means a company experienced in administering class action claims generally and specifically those of the type provided for and made in data breach litigation, to be jointly agreed upon by the Settling Parties and approved by the Court.

1.5 "Claims Deadline" means the postmark deadline for valid claims pursuant to ¶ 2.1.

1.6 "Claims Referee" means a third party designated by agreement of the Settling Parties and approved by the Court to make final decisions about disputed claims for settlement benefits.

1.7 "Costs of Claims Administration" means all actual costs associated with or arising from Claims Administration.

1.8 "Court" means the United States District Court for the District of Delaware.

1.9 "Dispute Resolution" means the process for resolving disputed Settlement Claims as set forth in this Agreement.

1.10 "Effective Date" means the first date by which all of the events and conditions specified in ¶ 1.11 herein have occurred and been met.

1.11 "Final" means the occurrence of all of the following events: (i) the settlement pursuant to this Settlement Agreement is approved by the Court; (ii) the Court has entered a Judgment (as that term is defined herein); and (iii) the time to appeal or seek permission to appeal from the Judgment has expired or, if appealed, the appeal has been dismissed in its

4

entirety, or the Judgment has been affirmed in its entirety by the court of last resort to which such appeal may be taken, and such dismissal or affirmance has become no longer subject to further appeal or review.   Notwithstanding the above, any order modifying or reversing any attorneys' fee award or incentive award made in this case shall not affect whether the Judgment is "Final" as defined herein or any other aspect of the Judgment.

1.12   "Judgment" means a judgment rendered by the Court, in the form attached hereto as Exhibit E, or a judgment substantially similar to such form.

1.13   "Notice Specialist" means a company or such other notice specialist with recognized expertise in class action notice generally and data security litigation specifically, to be be jointly agreed upon by the Settling Parties and approved by the Court.

1.14   "Objection Date" means the date by which Settlement Class Members must mail their objection to the Settlement in order for that request to be effective. The postmark date shall constitute evidence of the date of mailing for these purposes.

1.15   "Opt-Out Date" means the date by which Settlement Class Members must mail their requests to be excluded from the Settlement Class in order for that request to be effective. The postmark date shall constitute evidence of the date of mailing for these purposes.

1.16   "Person" means an individual, corporation, partnership, limited partnership, limited liability company or partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives, or assignees.

1.17    "Preliminary Approval Order" means the order preliminarily approving the Settlement Agreement and ordering that notice be provided to the Settlement Class.  The Settling Parties' proposed form of Preliminary Approval Order is attached hereto as Exhibit D.

1.18    "Proposed Co-Lead Settlement Class Counsel," "Plaintiffs' Counsel" and "Class Counsel" means Benjamin F. Johns of Chimicles & Tikellis LLP, and Cornelius P. Dukelow of Abington Cole + Ellery.

1.19    "Related Entities" means GameStop's past or present parents, subsidiaries, divisions, and related or affiliated entities, and each of GameStop's and their respective predecessors, successors, directors, officers, employees, principals, agents, attorneys, insurers, and reinsurers, and includes, without limitation, any Person related to any such entity who is, was or could have been named as a defendant in any of the actions in the Litigation, other than any Person who is found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Security Incident or who pleads nolo contendere to any such charge.

1.20    "Released Claims" shall collectively mean any and all claims and causes of action including, without limitation, any causes of action under 18 U.S.C. §§ 2701 *et seq.*, and all similar statutes in effect in any states in the United States as defined herein; violations of the Indiana, North Carolina and similar state consumer protection statutes; negligence; negligence per se; breach of contract; breach of implied contract; breach of fiduciary duty; breach of confidence; invasion of privacy; misrepresentation (whether fraudulent, negligent or innocent); unjust enrichment; bailment; wantonness; failure to provide adequate notice pursuant to any breach notification statute or common law duty; and including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees and

expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, the appointment of a receiver, and any other form of relief that either has been asserted, or could have been asserted, by any Settlement Class Member against any of the Released Persons based on, relating to, concerning or arising out of the Security Incident and alleged theft of payment card data or other personal information or the allegations, facts, or circumstances described in the Litigation.  Released Claims shall not include the right of any Settlement Class Member or any of the Released Persons to enforce the terms of the settlement contained in this Settlement Agreement, and shall not include the claims of Settlement Class Members who have timely excluded themselves from the Settlement Class.

1.21   "Released Persons" means GameStop, its Related Entities and each of their past or present parents, subsidiaries, divisions, and related or affiliated entities, and each of their respective predecessors, successors, directors, officers, employees, principals, agents, attorneys, insurers, and reinsurers.

1.22   "Representative Plaintiffs" means Crystal Bray and Samuel Cook.

1.23   "Security Incident" means the cyber-attack against GameStop's computer systems that occurred from approximately August 10, 2016 until February 9, 2017.

1.24   "Settlement Claim" means a claim for settlement benefits made under the terms of this Settlement Agreement.

1.25   "Settlement Class" means all persons residing in the United States who placed or attempted to place orders on GameStop's website from August 10, 2016 to February 9, 2017. The Settlement Class specifically excludes: (i) GameStop and its officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class;

(iii) the Judge assigned to evaluate the fairness of this settlement; and (iv) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Security Incident or who pleads *nolo contender* to any such charge.

1.26   "Settlement Class Member(s)" means a Person(s) who falls within the definition of the Settlement Class.

1.27   "Settling Parties" means, collectively, GameStop and Representative Plaintiffs, individually and on behalf of the Settlement Class.

1.28   "Unknown Claims" means any of the Released Claims that any Settlement Class Member, including any Representative Plaintiffs, does not know or suspect to exist in his/her favor at the time of the release of the Released Persons that, if known by him or her, might have affected his or her settlement with, and release of, the Released Persons, or might have affected his or her decision not to object to and/or to participate in this Settlement Agreement.  With respect to any and all Released Claims, the Settling Parties stipulate and agree that upon the Effective Date, Representative Plaintiffs expressly shall have, and each of the other Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, waived the provisions, rights, and benefits conferred by California Civil Code § 1542, and also any and all provisions, rights, and benefits conferred by any law of any state, province, or territory of the United States (including, without limitation, Montana Code Ann. § 28-1-1602; North Dakota Cent. Code § 9-13-02; and South Dakota Codified Laws § 20-7-11), which is similar, comparable, or equivalent to California Civil Code §1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF

KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Settlement Class Members, including Representative Plaintiffs, and any of them, may hereafter discover facts in addition to, or different from, those that they, and any of them, now know or believe to be true with respect to the subject matter of the Released Claims, but Representative Plaintiffs expressly shall have, and each other Settlement Class Member shall be deemed to have, and by operation of the Judgment shall have, upon the Effective Date, fully, finally and forever settled and released any and all Released Claims. The Settling Parties acknowledge, and Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver is a material element of the Settlement Agreement of which this release is a part.

1.29    "United States" as used in this Settlement Agreement includes the District of Columbia and all territories.

**2.      Settlement Benefits**

2.1     <u>Expense Reimbursement</u>. All Settlement Class Members who submit a valid claim using the Claim Form (Exhibit A to this Settlement Agreement) are eligible for the following out-of-pocket expenses, not to exceed $235 per Settlement Class Member, that were incurred as a result of the Security Incident: (i) unreimbursed bank fees; (ii) unreimbursed card reissuance fees; (iii) unreimbursed overdraft fees; (iv) unreimbursed charges related to unavailability of funds; (v) unreimbursed late fees; (vi) unreimbursed over-limit fees; (vii) long distance telephone charges; (viii) cell minutes (if charged by minute), Internet usage charges (if charged by the minute or by the amount of data usage and incurred solely as a result of the Security Incident), and text messages (if charged by the message and incurred solely as a result of the Security Incident); (ix) unreimbursed charges from banks or credit card companies; (x)

postage; (xi) interest on payday loans due to card cancellation or due to over-limit situation; (xii) up to three hours of documented lost time spent dealing with replacement card issues or in reversing fraudulent charges (calculated at the rate of $15 per hour), but only if at least one full hour was spent, and only if the time can be documented with reasonable specificity by answering the questions on the Claim Form; (xiii) an additional $22 payment for each credit or debit card on which documented fraudulent charges were incurred that were later reimbursed, to compensate the claimant for lost time associated with seeking reimbursement for the fraud, but no documentation of time spent will be required for this benefit; (xiv) costs of credit report(s) purchased by Settlement Class Members between June 2, 2017 and the date of the Preliminary Approval Order (with affirmative statement by Settlement Class Member that it was purchased primarily because of the Security Incident); and (xv) costs of credit monitoring and identity theft protection (not to exceed $120) purchased by Settlement Class Members between March 16, 2017 and one hundred twenty (120) days after the first date of publication of notice (with affirmative statement by Settlement Class Member that it was purchased primarily because of the Security Incident and not for other purposes, and with proof of purchase).

Settlement Class Members seeking reimbursement under this ¶ 2.1 must complete and submit a written Claim Form to the Claims Administrator, postmarked on or before the 150th day after the deadline for the completion of mailing notice to Settlement Class Members as set forth in ¶ 3.2. The notice to the class will specify this deadline and other relevant dates described herein. The Claim Form must be verified by the Settlement Class Member with a statement that his or her claim is true and correct, to the best of his or her knowledge and belief, and is being made under penalty of perjury. Notarization shall not be required. The Settlement Class Member must submit reasonable documentation that the out-of-pocket expenses and charges

claimed were both actually incurred and plausibly arose from the Security Incident.  Failure to provide supporting documentation as requested on the Claim Form shall result in denial of a claim.  Disputes as to claims submitted under this paragraph are to be resolved pursuant to the provisions stated in ¶ 2.4.

2.2     Other Extraordinary Expense Reimbursement.  GameStop shall reimburse, as provided for below, each Settlement Class Member in the amount of his or her proven loss, but not to exceed $10,000 per claim (and only one claim per Settlement Class Member), for a monetary out-of-pocket loss that is claimed by the Settlement Class Member to have occurred more likely than not as a result of the Security Incident, regardless of whether said Settlement Class Member elects to make a claim for any other benefit available under this Settlement Agreement, and further that: (a) it is an actual, documented, and unreimbursed monetary loss; (b) was more likely than not caused by the Security Incident; (c) occurred during the time period from August 10, 2016 through and including the end of the applicable claims period *(see* ¶ 2.1, *infra);* (d) is not already covered by one or more of the categories in ¶ 2.1; and (e) the claimant made reasonable efforts to avoid, or seek reimbursement for the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance as required under ¶ 2.2.2.  Settlement Class Members with claims under this paragraph may also submit claims for benefits under ¶ 2.1.

2.2.1   Claimants seeking reimbursement for expenses or losses described in ¶ 2.2 must complete and submit the appropriate section of the Claim Form to the Claims Administrator, together with proof of such losses.

2.2.2   Claimants must exhaust all credit monitoring insurance and identity theft insurance, before GameStop is responsible for any expenses claimed pursuant to ¶ 2.2 of this

Settlement Agreement.  Nothing in this Settlement Agreement shall be construed to provide for a double payment for the same loss or injury that was reimbursed or compensated by any other source.  To be valid, claims for extraordinary expenses must be complete and submitted to the Claims Administrator on or before the Claims Deadline.  No payment shall be made for emotional distress, personal/bodily injury, or punitive damages, as all such amounts are not recoverable pursuant to the terms of the Settlement Agreement.  For claims in excess of $200, the Settlement Administrator may request, and the claimant must disclose upon request, each other notice of a breach of their payment card data or other personal information they received in the three-year period that preceded the date of their claim hereunder; if the claimant has received no such notice, the claimant must so state.

    2.3   <u>Confirmatory Discovery</u>.  On June 28, 2018, GameStop provided confirmatory discovery to Plaintiffs' Counsel in the form of an interview, which was sufficient to verify that the following measures relating to payment card system security are presently in place:

    1)   GameStop, Inc. has designated a position within the company that is specifically responsible for overseeing information security compliance;

    2)   GameStop, Inc. has written IT security policies addressing the security of its PCI DSS environment;

    3)   GameStop, Inc. has hired a third-party Qualified Security Assessor to conduct an annual assessment of GameStop's compliance with PCI DSS and hired a penetration testing company to conduct an annual penetration test of GameStop, Inc.'s cardholder data environment.  Qualified Security Assessor means an independent security organization that has been qualified by the PCI Security Standards Council to assess an

entity's adherence to PCI DSS.  Penetration test means a manual process that complies

with the standards set forth by PCI DSS for penetration testing.

       4)      GameStop, Inc. will provide annual security awareness training for its

corporate and in-store employees engaged in its United States video game business,

which will include education and training regarding payment card data security and

payment card data security best practices.

2.3.1   Confirmatory  discovery  or  reasonable  confirmatory  declarations  also  may  be

requested as to the size of the Settlement Class as defined in ¶ 1.25.

2.3.2   Nothing about this provision shall create any contractual rights to any present or

future equitable remedy requiring GameStop to make or maintain any particular security

processes or procedures in the future.

2.4    <u>Dispute Resolution for Claims</u>.

2.4.1   The Claims Administrator, in its sole discretion to be reasonably exercised, will

determine whether: (1) the claimant is a Settlement Class Member; (2) the claimant has provided

all information needed to complete the Claim Form, including any documentation that may be

necessary to reasonably support the expenses described in ¶ 2.1 or ¶ 2.2; and (3) the information

submitted could lead a reasonable person to conclude that more likely than not the claimant has

suffered the claimed losses as a result of the Security Incident (collectively, "Facially Valid").

The Claims Administrator may, at any time, request from the claimant, in writing, additional

information ("Claim Supplementation") as the Claims Administrator may reasonably require in

order to evaluate the claim, *e.g.,* documentation requested on the Claim Form, information

regarding the claimed losses, available insurance and the status of any claims made for insurance

benefits, and claims previously made for identity theft and the resolution thereof.

2.4.2   Upon receipt of an incomplete or unsigned Claim Form or a Claim Form that is not accompanied by sufficient documentation to determine whether the claim is Facially Valid, the Claims Administrator shall request additional information ("Claim Supplementation") and give the claimant thirty (30) days to cure the defect before rejecting the claim.   Requests for Claim Supplementation shall be made within thirty (30) days of receipt of such Claim Form or thirty (30) days from the Effective Date, whichever comes later.   In the event of unusual circumstances interfering with compliance during the 30-day period, the claimant may request and, for good cause shown (illness, military service, out of the country, mail failures, lack of cooperation of third parties in possession of required information, etc.), shall be given a reasonable extension of the 30-day deadline in which to comply; however, in no event shall the deadline be extended to later than one year from the Effective Date.   If the defect is not cured, then the claim will be deemed invalid and there shall be no obligation to pay the claim.

2.4.3   Following receipt of additional information requested as Claim Supplementation, the Claims Administrator shall have thirty (30) days to accept, in whole or lesser amount, or reject each claim.   If, after review of the claim and all documentation submitted by the claimant, the Claims Administrator determines that such a claim is Facially Valid, then the claim shall be paid.   If the claim is not Facially Valid because the claimant has not provided all information needed to complete the Claim Form and evaluate the claim, then the Settlement Administrator may reject the claim without any further action.   If the claim is rejected for other reasons, then the claim shall be referred to the Claims Referee.

2.4.4   Settlement Class Members shall have thirty (30) days from receipt of the offer to accept or reject any offer of partial payment received from the Claims Administrator.   If a Settlement Class Member rejects an offer from the Claims Administrator, the Claims Administrator shall have fifteen (15) days to reconsider its initial adjustment amount and make a

final determination.  If the claimant approves the final determination, then the approved amount shall be the amount to be paid.  If the claimant does not approve the final determination within thirty (30) days, then the dispute will be submitted to the Claims Referee within an additional ten (10) days.

2.4.5  If any dispute is submitted to the Claims Referee, the Claims Referee may approve the Claims Administrator's determination by making a ruling within fifteen (15) days. The Claims Referee may make any other final determination of the dispute or request further supplementation of a claim within thirty (30) days.  The Claims Referee's determination shall be based on whether the Claims Referee is persuaded that the claimed amounts are reasonably supported in fact and were more likely than not caused by the Security Incident.  The Claims Referee shall have the power to approve a claim in full or in part.  The Claims Referee's decision will be final and non-appealable.  Any claimant referred to the Claims Referee shall reasonably cooperate with the Claims Referee, including by either providing supplemental information as requested or, alternatively, signing an authorization allowing the Claims Referee to verify the claim through third party sources, and failure to cooperate shall be grounds for denial of the claim in full.  The Claims Referee shall make a final decision within thirty (30) days of receipt of all supplemental information requested.

2.5    Settlement Expenses.  All costs for notice to the Settlement Class as required under ¶¶ 3.1 and 3.2, Costs of Claims Administration under ¶¶ 8.1, 8.2, and 8.3, and the costs of Dispute Resolution described in ¶ 2.4, shall be paid by GameStop.

2.6    Settlement Class Certification.  The Settling Parties agree, for purposes of this settlement only, to the certification of the Settlement Class.  If the settlement set forth in this Settlement Agreement is not approved by the Court, or if the Settlement Agreement is terminated or cancelled pursuant to the terms of this Settlement Agreement, this Settlement Agreement, and

15

the certification of the Settlement Class provided for herein, will be vacated and the Litigation shall proceed as though the Settlement Class had never been certified, without prejudice to any Person's or Settling Party's position on the issue of class certification or any other issue. The Settling Parties' agreement to the certification of the Settlement Class is also without prejudice to any position asserted by the Settling Parties in any other proceeding, case or action, as to which all of their rights are specifically preserved.

2.7     Confidentiality of Information Submitted by Settlement Class Members. Information submitted by Settlement Class Members pursuant to ¶¶ 2.1 through 2.4 of this Settlement Agreement shall be deemed confidential and protected as such by GameStop, the Claims Administrator, and the Claims Referee.

**3.     Order of Preliminary Approval and Publishing of Notice of Fairness Hearing**

3.1.    As soon as practicable after the execution of the Settlement Agreement, Proposed Co-Lead Settlement Class Counsel and counsel for GameStop shall jointly submit this Settlement Agreement to the Court and file a motion for preliminary approval of the settlement with the Court requesting entry of a Preliminary Approval Order in the form attached hereto as Exhibit D, or an order substantially similar to such form in both terms and cost, requesting, *inter alia:*

a)     certification of the Settlement Class for settlement purposes only pursuant to ¶ 2.6;

b)     preliminary approval of the Settlement Agreement as set forth herein;

c)     appointment of Proposed Co-Lead Settlement Class Counsel as Co-Lead Settlement Class Counsel;

d)     appointment of Representative Plaintiffs as Class Representatives;

e)     approval of a customary form of short notice to be emailed or mailed to Settlement Class Members (the "Short Notice") in a form substantially similar to

16

the one attached hereto as Exhibit B and a customary long form of notice ("Long Notice") in a form substantially similar to the one attached hereto as Exhibit C, which together shall include a fair summary of the parties' respective litigation positions, the general terms of the settlement set forth in the Settlement Agreement, instructions for how to object to or opt-out of the settlement, the process and instructions for making claims to the extent contemplated herein, and the date, time and place of the Final Fairness Hearing;

f)      appointment of a Notice Specialist as jointly agreed to by the Settling Parties;

g)      appointment of a Claims Administrator, or such other provider of claims administrative service, as may be jointly agreed to by the Settling Parties;

h)      approval of a claim form substantially similar to that attached hereto as Exhibit A. *See* ¶¶ 2.1 and 2.2 above; and

i)      appointment of a Person proposed by the Settling Parties to serve as Claims Referee.

The Short Notice, Long Notice, and Claim Form shall be reviewed by the Notice Specialist and Claims Administrator and may be revised as agreed upon by the Settling Parties prior to such submission to the Court for approval.

3.2     GameStop shall pay for providing notice to the Settlement Class in accordance with the Preliminary Approval Order, and the costs of such notice, together with the Costs of Claims Administration. Attorneys' fees, costs, and expenses of Proposed Co-Lead Settlement Class Counsel and Plaintiffs' Counsel, and incentive awards to Class Representatives, shall be paid by GameStop as set forth in ¶ 7 below. Notice shall be provided to Settlement Class Members via email to the email addresses provided when the Settlement Class Members conducted transactions with GameStop, or, in circumstances where a working email address is not available, via mail to the postal address provided when the Settlement Class Members conducted transactions with GameStop. The notice plan shall be subject to approval by the Court as meeting constitutional due process requirements. The Claims Administrator shall establish a dedicated settlement website and shall maintain and update the website throughout

17

the claim period, with the forms of Short Notice, Long Notice, and Claim Form approved by the Court, as well as this Settlement Agreement. A toll-free help line staffed with a reasonable number of live operators shall be made available to address Settlement Class Members' inquiries. The Claims Administrator also will provide copies of the forms of Short Notice, Long Notice, and Claim Form approved by the Court, as well as this Settlement Agreement, upon request. Prior to the Final Fairness Hearing, Proposed Co-Lead Settlement Class Counsel and GameStop shall cause to be filed with the Court an appropriate affidavit or declaration with respect to complying with this provision of notice. The Short Notice, Long Notice, and Claim Form approved by the Court may be adjusted by the Notice Specialist and/or Claims Administrator, respectively, in consultation and agreement with the Settling Parties, as may be reasonable and not inconsistent with such approval. The Notice Program shall commence within thirty (30) days after entry of the Preliminary Approval Order and shall be completed within forty-five (45) days after entry of the Preliminary Approval Order.

3.3     Proposed Co-Lead Settlement Class Counsel and GameStop's counsel shall request that after notice is completed, the Court hold a hearing (the "Final Fairness Hearing") and grant final approval of the settlement set forth herein.

3.4     GameStop will also cause the Claims Administrator to provide (at GameStop's expense) notice to the relevant state and federal governmental officials as required by the Class Action Fairness Act.

**4.     Opt-Out Procedures**

4.1     Each Person wishing to opt-out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated Post Office box established by the Claims Administrator. The written notice must clearly manifest a Person's intent to be excluded

from the Settlement Class.  To be effective, written notice must be postmarked no later than one hundred twenty (120) days after the date on which the Notice Program commences pursuant to ¶ 3.2.

4.2     All Persons who submit valid and timely notices of their intent to be excluded from the Settlement Class, as set forth in ¶ 4.1 above, referred to herein as "Opt-Outs," shall not receive any benefits of and/or be bound by the terms of this Settlement Agreement.  All Persons falling within the definition of the Settlement Class who do not request to be excluded from the Settlement Class in the manner set forth in ¶ 4.1 above shall be bound by the terms of this Settlement Agreement and Judgment entered thereon.

4.3     In the event that within ten (10) days after the Opt-Out Date as approved by the Court, there have been more Opt-Outs (exclusions) than listed in a separate letter agreement to be shared with the Court, GameStop may, by notifying Proposed Co-Lead Settlement Class Counsel in writing, void this Settlement Agreement.   If GameStop voids the Settlement Agreement pursuant to this paragraph, GameStop shall be obligated to pay all settlement expenses already incurred, excluding any attorneys' fees, costs, and expenses of Proposed Co-Lead Settlement Class Counsel and Plaintiffs' Counsel and incentive awards and shall not, at any time, seek recovery of same from any other party to the Litigation or from counsel to any other party to the Litigation.

**5.      Objection Procedures**

5.1     Each Settlement Class Member desiring to object to the Settlement Agreement shall submit a timely written notice of his or her objection by the Objection Date.  Such notice shall state: (i) the objector's full name, address, telephone number, and e-mail address (if any); (ii) information identifying the objector as a Settlement Class Member, including proof that the

objector is a member of the Settlement Class (e.g., copy of notice, copy of original notice of the

Security Incident); (iii) a written statement of all grounds for the objection, accompanied by any

legal support for the objection the objector believes applicable; (iv) the identity of all counsel

representing the objector; (v) a statement whether the objector and/or his or her counsel will

appear at the Final Fairness Hearing; (vi) the objector's signature and the signature of the

objector's duly authorized attorney or other duly authorized representative (along with

documentation setting forth such representation); and (vii) a list, by case name, court, and docket

number, of all other cases in which the objector and/or the objector's counsel has filed an

objection to any proposed class action settlement within the last three (3) years.  To be timely,

written notice of an objection in the appropriate form must be filed with the Clerk of the Court

no later than one hundred twenty (120) days from the date on which the Notice Program

commences pursuant to ¶ 3.2, and served concurrently therewith upon Proposed Co-Lead

Settlement Class Counsel, Benjamin F. Johns, Chimicles & Tikellis LLP, 361 West Lancaster

Avenue, Haverford, Pennsylvania, 19041; and counsel for GameStop, Paul G. Karlsgodt, Baker

Hostetler, 1801 California Street, Suite 4400, Denver, Colorado 80202-2662.

     5.2     Any Settlement Class Member who fails to comply with the requirements for

objecting in ¶ 5.1 shall waive and forfeit any and all rights he or she may have to appear

separately and/or to object to the Settlement Agreement, and shall be bound by all the terms of

the Settlement Agreement and by all proceedings, orders and judgments in the Litigation.  The

exclusive means for any challenge to the Settlement Agreement shall be through the provisions

of ¶ 5.1.  Without limiting the foregoing, any challenge to the Settlement Agreement, the final

order approving this Settlement Agreement, or the Judgment to be entered upon final approval

shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

**6.** **Releases**

6.1    Upon the Effective Date, each Settlement Class Member, including Representative Plaintiffs, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims. Further, upon the Effective Date, and to the fullest extent permitted by law, each Settlement Class Member, including Representative Plaintiffs, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action in this or any other forum (other than participation in the settlement as provided herein) in which any of the Released Claims is asserted.

6.2    Upon the Effective Date, GameStop shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged, Representative Plaintiffs, each and all of the Settlement Class Members, Proposed Co-Lead Settlement Class Counsel and Plaintiffs' Counsel, of all claims, including Unknown Claims, based upon or arising out of the institution, prosecution, assertion, settlement, or resolution of the Litigation or the Released Claims, except for enforcement of the Settlement Agreement. Any other claims or defenses GameStop may have against such Persons including, without limitation, any claims based upon or arising out of any retail, banking, debtor-creditor, contractual, or other business relationship with such Persons that are not based upon or do not arise out of the institution, prosecution, assertion, settlement, or resolution of the Litigation or the Released Claims are specifically preserved and shall not be affected by the preceding sentence.

6.3     Notwithstanding any term herein, neither GameStop, nor its Related Parties, shall have or shall be deemed to have released, relinquished or discharged any claim or defense against any Person other than Representative Plaintiffs, each and all of the Settlement Class Members, Proposed Co-Lead Settlement Class Counsel and Plaintiffs' Counsel.

**7.     Plaintiffs' Counsel's Attorneys' Fees, Costs, and Expenses; Incentive Award to Representative Plaintiffs**

7.1     The Settling Parties did not discuss the payment of attorneys' fees, costs, expenses and/or incentive award to Representative Plaintiffs, as provided for in ¶¶ 7.2 and 7.3, until after the substantive terms of the settlement had been agreed upon, other than that GameStop would pay reasonable attorneys' fees, costs, expenses, and an incentive award to Representative Plaintiffs as may be agreed to by GameStop and Proposed Co-Lead Settlement Class Counsel and/or as ordered by the Court, or in the event of no agreement, then as ordered by the Court.  GameStop and Proposed Co-Lead Settlement Class Counsel then negotiated and agreed as follows:

7.2     GameStop has agreed to pay, subject to Court approval, the amount of $557,500.00 to Proposed Co-Lead Settlement Class Counsel for attorneys' fees, and additionally, reasonable costs and expenses of all cases against GameStop that they have pursued over the Security Incident.  Proposed Co-Lead Settlement Class Counsel, in their sole discretion, shall allocate and distribute the amount of attorneys' fees, costs, and expenses awarded by the Court among Plaintiffs' Counsel.

7.3     GameStop shall pay the Court-approved amount of attorneys' fees and costs, within thirty (30) days after the Court's entry of the final approval order and final judgment, regardless of any appeal that may be filed or taken by any Class Member or third party. Class Counsel will repay to GameStop the amount of the award of attorneys' fees and costs in the

event that the final approval order and final judgment are not upheld on appeal and, if only a portion of fees or costs (or both) is upheld, Class Counsel will repay to GameStop the amount necessary to ensure the amount of attorneys' fees or costs (or both) comply with any court order.

7.4     Subject to Court approval, GameStop has agreed to pay an incentive award in the amount of $3,750 to each of the Representative Plaintiffs.

7.5     Within ten (10) business days after the Effective Date, GameStop shall pay the attorneys' fees, costs, expenses, and incentive awards to Representative Plaintiffs, as set forth above in ¶¶ 7.2, 7.3, and 7.4, to an account established by Proposed Co-Lead Settlement Class Counsel.  Proposed Co-Lead Settlement Class Counsel shall thereafter distribute the award of attorneys' fees, costs, and expenses among Plaintiffs' Counsel and incentive award to Representative Plaintiffs consistent with ¶¶ 7.2 and 7.3.

7.6     The amount(s) of any award of attorneys' fees, costs, and expenses, and the incentive award to Representative Plaintiffs, are intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement. No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of any attorneys' fees, costs, expenses, and/or incentive award ordered by the Court to Proposed Co-Lead Settlement Class Counsel or Representative Plaintiffs shall affect whether the Judgment is Final or constitute grounds for cancellation or termination of this Settlement Agreement.

**8.     Administration of Claims**

8.1     The Claims Administrator shall administer and calculate the claims submitted by Settlement Class Members under ¶¶ 2.1 and 2.2.  Proposed Co-Lead Settlement Class Counsel and GameStop shall be given reports as to both claims and distribution, and have the right to

review and obtain supporting documentation and challenge such reports if they believe them to be inaccurate or inadequate.  The Claims Administrator's and Claims Referee's, as applicable, determination of the validity or invalidity of any such claims shall be binding, subject to the dispute resolution process set forth in ¶ 2.4.  All claims agreed to be paid in full by GameStop shall be deemed valid.

8.2     Checks for approved claims shall be mailed and postmarked within sixty (60) days of the Effective Date, or within thirty (30) days of the date that the claim is approved, whichever is later.

8.3     All Settlement Class Members who fail to timely submit a claim for any benefits hereunder within the time frames set forth herein, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments or benefits pursuant to the settlement set forth herein, but will in all other respects be subject to, and bound by, the provisions of the Settlement Agreement, the releases contained herein and the Judgment.

8.4     No Person shall have any claim against the Claims Administrator, Claims Referee, GameStop, Proposed Co-Lead Settlement Class Counsel, Plaintiffs, Plaintiffs' Counsel, and/or GameStop's counsel based on distributions of benefits to Settlement Class Members.

**9.     Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

9.1     The Effective Date of the settlement shall be conditioned on the occurrence of all of the following events:

a)     the Court has entered the Order of Preliminary Approval and Publishing of Notice of a Final Fairness Hearing, as required by ¶ 3.1;

b)     GameStop has not exercised its option to terminate the Settlement Agreement pursuant to ¶ 4.3;

c)     the Court has entered the Judgment granting final approval to the settlement as set forth herein; and

d)      the Judgment has become Final, as defined in ¶ 1.11.

9.2     If all of the conditions specified in ¶ 9.1 hereof are not satisfied, the Settlement

Agreement shall be canceled and terminated subject to ¶ 9.4 unless Proposed Co-Lead

Settlement Class Counsel and GameStop's counsel mutually agree in writing to proceed with the

Settlement Agreement.

9.3     Within seven (7) days after the Opt-Out Date, the Claims Administrator shall

furnish to Proposed Co-Lead Settlement Class Counsel and to GameStop's counsel a complete

list of all timely and valid requests for exclusion (the "Opt-Out List").

9.4     In the event that the Settlement Agreement is not approved by the Court or the

settlement set forth in the Settlement Agreement is terminated in accordance with its terms, (i)

the Settling Parties shall be restored to their respective positions in the Litigation and shall

jointly request that all scheduled litigation deadlines be reasonably extended by the Court so as

to avoid prejudice to any Settling Party or Settling Party's counsel, and (b) the terms and

provisions of the Settlement Agreement shall have no further force and effect with respect to the

Settling Parties and shall not be used in the Litigation or in any other proceeding for any purpose,

and any judgment or order entered by the Court in accordance with the terms of the Settlement

Agreement shall be treated as vacated, *nunc pro tunc*.  Notwithstanding any statement in this

Settlement Agreement to the contrary, no order of the Court or modification or reversal on

appeal of any order reducing the amount of attorneys' fees, costs, expenses, and/or incentive

awards shall constitute grounds for cancellation or termination of the Settlement Agreement.

Further, notwithstanding any statement in this Settlement Agreement to the contrary, GameStop

shall be obligated to pay amounts already billed or incurred for costs of notice to the Settlement

Class, Claims Administration, and Dispute Resolution pursuant to ¶ 2.4 above and shall not, at

any time, seek recovery of same from any other party to the Litigation or from counsel to any other party to the Litigation.

**10.      Miscellaneous Provisions**

10.1    The Settling Parties (i) acknowledge that it is their intent to consummate this agreement; and (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement, and to exercise their best efforts to accomplish the terms and conditions of this Settlement Agreement.

10.2    The Settling Parties intend this settlement to be a final and complete resolution of all disputes between them with respect to the Litigation.  The settlement compromises claims that are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense.  The Settling Parties each agree that the settlement was negotiated in good faith by the Settling Parties, and reflects a settlement that was reached voluntarily after consultation with competent legal counsel.  The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis. It is agreed that neither Party shall have any liability to one another as it relates to the Litigation, except as set forth herein.

10.3    Neither the Settlement Agreement, nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of any of the Released Persons; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Persons in any civil, criminal or

administrative proceeding in any court, administrative agency or other tribunal.   Any of the Released Persons may file the Settlement Agreement and/or the Judgment in any action that may be brought against them or any of them in order to support a defense or counterclaim based on principles of *res judicata,* collateral estoppel, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

10.4    All documents and materials provided by GameStop in confirmatory discovery pursuant to ¶ 2.3 shall be treated as confidential and returned to GameStop within sixty (60) days of the Effective Date.   Such documents and materials may not be used for any purpose other than confirmatory discovery in this Litigation.

10.5    The Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

10.6    The Settlement Agreement, together with the Exhibits attached hereto, constitutes the entire agreement among the parties hereto, and no representations, warranties or inducements have been made to any party concerning the Settlement Agreement other than the representations, warranties and covenants contained and memorialized in such document. Except as otherwise provided herein, each party shall bear its own costs.   This agreement supersedes all previous agreements made by the parties.

10.7    Proposed Co-Lead Settlement Class Counsel, on behalf of the Settlement Class, is expressly authorized by Representative Plaintiffs to take all appropriate actions required or permitted to be taken by the Settlement Class pursuant to the Settlement Agreement to effectuate its terms, and also are expressly authorized to enter into any modifications or amendments to the

Settlement Agreement on behalf of the Settlement Class which they deem appropriate in order to carry out the spirit of this Settlement Agreement and to ensure fairness to the Settlement Class.

10.8    Each counsel or other Person executing the Settlement Agreement on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

10.9    The Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court.

10.10    The Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto.

10.11    The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Settlement Agreement.

10.12    The Settlement Agreement shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of Delaware, and the rights and obligations of the parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Delaware.

10.13    As used herein, "he" means "he, she, or it;" "his" means "his, hers, or its," and "him" means "him, her, or it.''

10.14    All dollar amounts are in United States dollars (USD).

10.15    Cashing a settlement check is a condition precedent to any Settlement Class Member's right to receive settlement benefits. All settlement checks shall be void sixty (60) days after issuance and shall bear the language: "This check must be cashed within 60 days, after

which time it is void." If a check becomes void, the Settlement Class Member shall have until six months after the Effective Date to request re-issuance. If no request for re-issuance is made within this period, the Settlement Class Member will have failed to meet a condition precedent to recovery of settlement benefits, the Settlement Class Member's right to receive monetary relief shall be extinguished, and GameStop shall have no obligation to make payments to the Settlement Class Member for expense reimbursement under ¶ 2.1 or ¶ 2.2 or any other type of monetary relief. The same provisions shall apply to any re-issued check. For any checks that are issued or re-issued for any reason more than one hundred eighty (180) days from the Effective Date, requests for re-issuance need not be honored after such checks become void.

10.16    All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

IN WITNESS WHEREOF, the parties hereto have caused the Settlement Agreement to be executed, by their duly authorized attorneys.

Proposed Co-Lead Settlement Class Counsel

Counsel for GameStop and Duly Authorized Signatory

**CHIMICLES & TIKELLIS LLP**

By:    */s/ Benjamin F. Johns*
Benjamin F. Johns (*pro hac vice*)
Andrew W. Ferich (*pro hac vice*)
CHIMICLES & TIKELLIS LLP
361 W. Lancaster Avenue
Haverford, Pennsylvania 19041
Tel: (610) 642-8500
bfj@chimicles.com
awf@chimicles.com

Robert J. Kriner, Jr. (DE Bar No. 2546)

**BAKER HOSTETLER**

By:    */s/ Paul Karlsgodt*
Paul Karlsgodt
1801 California Street, Suite 4400
Denver, Colorado 80202-2662
(303) 764-0600
pkarlsgodt@bakerlaw.com

**BALLARD SPAHR LLP**
Edward J. McAndrew
Delaware Bar No. 5638
Evan W. Krick

Vera G. Belger (DE Bar No. 5676)
CHIMICLES & TIKELLIS LLP
222 Delaware Ave, Suite 1100
Wilmington, DE 19801
(302) 656-2500
rjk@chimicles.com
vgb@chimicles.com

Cornelius P. Dukelow (*pro hac vice*)
Oklahoma Bar No. 19086
ABINGTON COLE + ELLERY
320 South Boston Avenue, Suite 1130
Tulsa, Oklahoma 74103
918.588.3400 (telephone & facsimile)
cdukelow@abingtonlaw.com
www.abingtonlaw.com

*Attorneys for Plaintiffs*
 *Crystal Bray and Samuel Cook*

Delaware Bar No. 6094
919 N. Market Street, 11th Floor
Wilmington, DE 19801-3034
(302) 252-4451
mcandrewe@ballardspahr.com
kricke@ballardspahr.com

*Attorneys for Defendant*
*GameStop Corporation*