## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CRYSTAL BRAY and SAMUEL COOK, on behalf of themselves and all others similarly situated, | ) ) ) | CASE NO. 1:17-cv-01365-JEJ |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CLASS ACTION |
| | ) | |
| GAMESTOP CORPORATION, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT

Robert J. Kriner, Jr. (DE Bar No. 2546)
Vera G. Belger (DE Bar No. 5676)
**CHIMICLES & TIKELLIS LLP**
222 Delaware Ave, Suite 1100
Wilmington, DE 19801
(302) 656-2500
rjk@chimicles.com
vgb@chimicles.com

Cornelius P. Dukelow
Oklahoma Bar No. 19086
**ABINGTON COLE + ELLERY**
320 South Boston Avenue, Suite 1130
Tulsa, Oklahoma 74103
918.588.3400 (*telephone & facsimile*)
cdukelow@abingtonlaw.com
www.abingtonlaw.com

Benjamin F. Johns (*pro hac vice*)
Andrew W. Ferich (*pro hac vice*)
**CHIMICLES & TIKELLIS LLP**
361 W. Lancaster Avenue
Haverford, Pennsylvania 19041
Tel: (610) 642-8500
bfj@chimicles.com
awf@chimicles.com

*Attorneys for Plaintiffs Crystal Bray and Samuel Cook*

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................1

II.   FACTUAL BACKGROUND .............................................................................1

      A.    History Of Litigation.................................................................................1

      B.    Settlement Negotiations ...........................................................................2

      C.    The Settlement ...........................................................................................2

      D.    Terms Of The Settlement Agreement ....................................................3

      E.    Implementation of the Settlement Notice Plan ....................................4

III.  ARGUMENT .......................................................................................................6

      A.    The Settlement is Fair, Reasonable, and Adequate...............................6

            1.    The Girsh Factors Weigh in Favor of Approval ..........................8

                  (a)    The complexity, expense, and duration of continued litigation.......8

                  (b)    The reaction of the class to the settlement ......................................9

                  (c)    The stage of the proceedings........................................................10

                  (d)    The risks of establishing liability and damages ...........................10

                  (e)    The risks of certifying and maintaining
                         a litigation class through trial.......................................................11

                  (f)    Defendant's ability to withstand greater judgment.......................12

                  (g)    Reasonableness of the settlement in light of the best possible
                         recovery and all attendant risks of litigation.................................12

            2.    The Relevant Prudential and Baby Products Factors
                  Also Support Settlement. ...........................................................12

      B.    The Notice Program is Constitutionally Sound
            and Has Been Fully Implemented........................................................14

      C.    The Settlement Class Should Be Certified............................................14

1.  The Rule 23(a) Factors Are Met ..................................................15

 (a) Numerosity.....................................................................15

 (b) Commonality..................................................................16

 (c) Typicality .......................................................................16

 (d) Adequacy .......................................................................17

2.  The Rule 23(b)(3) Factors Are Met ...........................................18

 (a) Predominance.................................................................18

 (b) Superiority......................................................................18

IV. CONCLUSION....................................................................................19

# TABLE OF AUTHORITIES

## CASES

*Amchem Prods., Inc. v. Windsor,*
   521 U.S. 591 (1997) ............................................................................. 15, 17, 18, 19

*In re Baby Prods. Antitrust Litig.,*
   708 F.3d 163 (3d. Cir. 2013) ................................................................................ 13

*Bredbenner v. Liberty Travel, Inc.,*
   2011 WL 1344745 (D.N.J. Apr. 8, 2011) ............................................... 7, 8, 10, 12

*In Re: Cendant Corporation Litigation,*
   264 F.3d 201 (3d Cir. 1992) (*Cendant II*) ................................................ 8, 10, 11

*In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.,*
   269 F.R.D. 468 (E.D. Pa. 2010) ..................................................................... 6, 12

*In re Community Bank of No. Virginia,*
   418 F.3d 277 (3d Cir. 2005) ................................................................................ 15

*Danvers Motor Co., Inc. v. Ford Motor Co.,*
   543 F.3d 141 (3d Cir. 2008) ................................................................................ 19

*Eisen v. Carlisle & Jacquelin,*
   417 U.S. 156 (1974) ............................................................................................ 14

*Feret v. CoreStates Fin. Corp.,*
   No. 97-6759, 1998 U.S. Dist. LEXIS 12734 (E.D. Pa. Aug. 18, 1998) ................ 16

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,*
   55 F.3d 768 (3d Cir. 1995) ............................................................................ *passim*

*Girsh v. Jepson,*
   521 F.2d 153 (3d Cir. 1975) ........................................................................... *passim*

*Johnston v. HBO Film Mgmt., Inc.,*
   265 F.3d 178 (3d Cir. 2001) .......................................................................... 16, 17

*Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.,*
   149 F.R.D. 65 (D.N.J. 1993) ................................................................................ 15

*McDonough v. Toys R. Us, Inc.,*
   80 F. Supp. 3d 626 (E.D. Pa. 2015) ..................................................................... 13

*In re Mercedes-Benz Antitrust Litig.,*
   213 F.R.D. 180 (D.N.J. 2003) ............................................................................. 18

iii

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)................................................................................14

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001)..................................................................16

*O'Brien v. Brain Research Labs, LLC*,
    2012 WL 3242365 (D.N.J. Aug. 9, 2012) .............................................19

*In re Pet Food Prods. Liab. Litig*,
    629 F.3d 333 (3d Cir. 2010)..................................................................13

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985)..............................................................................14

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    962 F. Supp. 450 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998)......................9, 12, 13, 15

*Reyes v. Netdeposit, LLC*,
    802 F.3d 469 (3d Cir. 2015)..................................................................16

*In re Safety Components, Inc. Sec. Litig.*,
    166 F. Supp. 2d 72 (D.N.J. 2001) ........................................................10

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001)..................................................................16

*Stoetzner v. U. S. Steel Corp.*,
    897 F.2d 115 (3d Cir. 1990)....................................................................9

*Varacallo v. Mass. Mutual Life Ins. Co.*,
    226 F.R.D. 207 (D.N.J. 2005) ..............................................................19

*In re Warfarin Sodium Antitrust Litig.*,
    212 F.R.D. 231 (D. Del. 2002), *aff'd* 391 F.3d 516 (3d Cir. 2004) ........................................10

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)............................................................. *passim*

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    722 F.3d 838 (6th Cir. 2013) ...............................................................18

## OTHER AUTHORITIES

FED. R. CIV. P. 23 *et seq.*...................................................................... *passim*

## I.    INTRODUCTION

On August 1, 2018, this Court entered an Amended Order Conditionally Certifying a Settlement Class, Granting Preliminary Approval of the Class Action Settlement, Approving the Form and Manner of Notice, and Scheduling a Final Approval Hearing for December 19 ("Preliminary Approval Order") Dkt. No. 43.[1]  The Preliminary Approval Order approved the Settlement Agreement that had been filed in conjunction with Plaintiffs' Unopposed Motion for Preliminary Approval by the parties ("SA" or "Settlement"). *See* Dkt. No. 40-1. As set forth below, the notice plan has since been effectuated and no Class Members have objected to the terms of the Settlement. For the reasons discussed below, and because the criteria for final approval under FED. R. CIV. P. 23(e) are met, Plaintiffs respectfully request that the Court grant final approval to the Settlement. Defendant does not oppose this motion.

## II.    FACTUAL BACKGROUND

### A.    <u>History Of Litigation</u>

The Court is well aware of the factual and procedural history of this case. Plaintiffs are consumers whose personal and non-public information, including their names, addresses, and credit card and debit card numbers, expiration dates, and other information was compromised in a massive security breach of Defendant's computer servers beginning on or around August 10, 2016 and lasting until February 9, 2017 (the "Data Breach"). Plaintiffs alleged that, *inter alia*, in the wake of the breach, GameStop failed to make meaningful assistance available to its customers, such as fraud insurance or credit monitoring.  The Complaint sought to represent a class consisting of all GameStop customers who used a credit or debit card to place (or attempt to place) a purchase on www.gamestop.com between August 10, 2016 and February 9, 2017.

---

[1] The initial Order granting Preliminary Approval was entered on July 23, 2018. *See* Dkt. No. 42.

### B.   Settlement Negotiations

As described in the Preliminary Approval motion and brief (*see* Dkt. Nos. 40-41), the parties engaged in a full-day mediation session with private mediator Bennett Picker of Stradley Ronon Stevens & Young LLP in Philadelphia on May 2, 2018.  Following the mediation session, the parties reached agreement on the material terms of the settlement. Only after the parties agreed on the framework and material terms of a settlement did they began negotiating (and ultimately agree upon, with the aid of a double-blind mediator's proposal) an appropriate request for attorneys' fees and expenses and Plaintiffs' incentive awards.[2] All terms of the Settlement are the result of extensive, adversarial, and arm's-length negotiations between experienced counsel for all parties.

### C.   The Settlement

As discussed in more detail below, the  Settlement provides for  cash payments to Class Members for a variety of expenses incurred due to the Data Breach. SA  at ¶¶ 2.1-2.2. In addition, as part of settlement negotiations, GameStop made certain representations to Plaintiffs' counsel regarding the measures taken following the breach to increase GameStop's data security measures and consumer information protection procedures. *Id.* at ¶ 2.3.

In  exchange  for  this consideration,  Plaintiffs  agreed  to  provide Defendant with a release of claims relating in any way to the alleged conduct that gave rise to this action. SA at ¶ 6. Final approval of the Settlement will also result in  the dismissal with prejudice of Plaintiffs' claims against Defendant.  *Id.* at ¶ 4.

---

[2] Plaintiffs filed an Unopposed Motion for Award of Attorneys' Fees, Expenses and Incentive Awards on November 26, 2018. *See* Dkt. No. 47.

### D.   Terms Of The Settlement Agreement

Each Class Member will have the opportunity to participate in the Settlement claims process by completing a Claim Form accounting for losses claimed as a result of the Data Breach. As more fully explained in the Settlement Agreement, all Class Members who submit a valid claim during the claim period will be entitled to expense reimbursement of up to $235 for the following categories of potential expenses incurred as a result of the Data Breach:

- between one and three hours of documented lost time spent dealing with replacement card issues or in reversing fraudulent charges (calculated at the rate of $15 per hour);

- a $22 payment for each card on which documented fraudulent charges were incurred, even if they were later reimbursed;

- costs of credit report(s) purchased by Settlement Class Members between June 2, 2017 and the date of the Preliminary Approval Order;

- costs of credit monitoring and identity theft protection (not to exceed $120) purchased by Settlement Class Members between March 16, 2017 and 120 days after the first date of publication of notice; and

- miscellaneous other specified expenses (i.e., unreimbursed charges from banks or credit card companies, bank fees, card reissuance fees, overdraft fees, charges related to unavailability of funds, late fees, and/or over-limit fees; long distance telephone charges; cell minutes, Internet usage charges, and text messages; postage; interest on payday loans due to card cancelation or due to over-limit situation).

SA at ¶ 2.1.

Any Class Members who experienced extraordinary expenses will be eligible for reimbursement in the amount up to $10,000 per claim. *Id.* at ¶ 2.2. In addition and separate from any payment to Class Members under the provisions described above, Defendant shall pay any and all notice and administration costs associated with the settlement. *Id.* at ¶ 2.4.5.

Each Claim Form that is submitted will be evaluated by an independent claims adjuster, Heffler Claims Group ("Heffler"), who has been mutually agreed upon by the parties. Heffler will make all final decisions concerning the issuance of awards through the Claims Process. The

independent claims adjuster will apply objective industry standards in evaluating claims, which will be accomplished pursuant to the terms of the Settlement Agreement. *See id.* at ¶¶ 2.4.1-2.4.5, 8.1-8.4 The Settlement Agreement clearly delineates the process and procedure in the event a Claim is rejected or a Class Member wishes to contest the decision of the independent claims adjuster and go before a Claims Referee. *Id.* at ¶ 2.4.5. The Settlement Agreement also provides that the independent claims adjuster provide notice of deficiency to Class Members and affords the Class Member the opportunity to cure any defect. *Id.* at ¶¶ 2.4.2-2.4.3. In short, all Settlement Class Members will have the opportunity to realize full recovery for all losses as a result of the Data Breach.

Additional information about the settlement and the negotiations leading up to it can be found in the Declarations of Benjamin F. Johns submitted with Plaintiffs' motions for preliminary approval and for attorneys' fees. *See* Dkt. Nos. 40-2 & 47-1.

### E.   Implementation of the Settlement Notice Plan

Promptly after the Court granted preliminary approval, the parties began working with the claims administrator to provide the Class with the Court-approved notice in accordance with the Settlement. As set forth in the accompanying Declaration of Joseph F. Mahan ("Mahan Decl."), an employee and Client Services Manager for the claims administrator (i.e., Heffler), Heffler provided notice of the proposed settlement reflected in the Settlement Agreement pursuant to the Class Action Fairness Act 28 U.S.C. §1715(b) ("the CAFA Notice"). Mahan Decl., at ¶ 4.  Heffler sent the CAFA Notice and an accompanying CD containing the documents required under 28 U.S.C. §1715(b)(1)-(8) to the Attorney General of the United States and 52 state Attorneys General via First-Class Certified Mail, on July 26, 2018. *Id.* Heffler has not received a response to the notification. *Id.*

On July 26, 2018 Heffler received a data file containing 1,420,654 records. The data file's key components were first name, last name, email address, phone number, street address, city, state and zip code. *Id*. at ¶ 5. Heffler performed an analysis of the data and identified the following: (a) 112,904 duplicate records; (b) 16,705 foreign records and; (c) 378 records with no actionable information, resulting in a total of 1,290,667 actionable records. *Id.* Of those, 1,091,192 contained a unique email address and 199,475 contained only a physical address. *Id*.

In August 2018, Heffler (1) obtained a P.O. Box in order to receive requests for exclusion, claim forms, objections, and correspondence from Class Members, and (2) created and is currently hosting a dedicated website for the settlement. *Id.* ¶¶ 6-7. The website contains a summary of the Settlement, frequently asked questions, the Settlement Agreement, the Complaint, the Preliminary Approval Order, the Amended Preliminary Approval Order, the Class Notices, Claim Form, information on the claim filing/exclusion/objection deadlines and allows Class Members the opportunity to file a claim form online. *Id*. ¶ 7. Heffler has also established and is still maintaining a toll-free number for Class Members to call and obtain additional information regarding the settlement. *Id*. ¶ 8.

Heffler received Word versions of the Email Notice, Long Form Notice, Postcard Notice and Claim Form from class counsel; prepared and formatted drafts of the materials that counsel reviewed and approved; and sent Email Notices to the 1,091,192 email addresses on file for Class Members. *Id*. at ¶¶ 9-10.[3] Heffler printed and mailed Postcard Notices to the 199,475 Class Members with only a physical address on file. Heffler also ran the data through the USPS National Change of Address ("NCOA") database and updated the data with the address changes received from NCOA. *Id*. at ¶ 11.

---

[3] Heffler also printed and mailed Postcard Notices to the 256,258 Class Members whose initial Email Notice either bounced or unsubscribed. *Id*. at ¶ 12.

As of December 3, 2018, Heffler has received only 50,643 Postcard Notices returned by the USPS as undeliverable as addressed. *Id*. at ¶ 13. Heffler has updated the records in the database to identify these as undeliverable, and ran 45,057 undeliverable records through an address trace process through LexisNexis. *Id*.   This skip-tracing process produced 26,039 updated addresses, and Heffler re-mailed Notices to the 26,039 updated addresses obtained from the trace process. *Id*. In addition to the work performed by the claims administrator, Class Counsel has individually contacted putative class members to inform them of the settlement, advise them of deadlines, and assist them with the preparation of claim forms.

Also as of December 3, 2018, Heffler has received and processed only 27 requests for exclusion from the settlement and no objections to the settlement. *Id*. at ¶¶ 15-16. No objections have been filed with the Court, nor received by Plaintiffs' counsel, counsel for GameStop or Heffler.

## III.    ARGUMENT

### A.    <u>The Settlement is Fair, Reasonable, and Adequate</u>

Rule 23(e) of the Federal Rules of Civil Procedure requires a determination by the Court that the proposed settlement is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e); *see also In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 534 (3d Cir. 2004) ("*Warfarin II"*). There is a strong judicial policy in favor of resolution of litigation before trial, particularly in "class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 484 (E.D. Pa. 2010) (quoting *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010)); *see also In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768,

784 (3d Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.").

Settlements enjoy a presumption that they are fair and reasonable when they are the product of arm's-length negotiations conducted by experienced counsel who are fully familiar with all aspects of class action litigation. *See, e.g.*, *Bredbenner v. Liberty Travel, Inc.*, 2011 WL 1344745, at *10 (D.N.J. Apr. 8, 2011) ("A class settlement is entitled to an 'initial presumption of fairness' when '(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'") (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 785).

The Third Circuit has adopted a nine-factor test to determine whether a settlement is "fair, reasonable, and adequate." The elements of this test – known as the "*Girsh* factors" – are:

> (1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 785 (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)). "These factors are a guide and the absence of one or more does not automatically render the settlement unfair." *In re Am. Family Enters.*, 256 B.R. 377, 418 (D.N.J. 2000).  The Settlement meets each of these factors, and thus, should be approved.

7

1.     The *Girsh* Factors Weigh in Favor of Approval

(a)     **The complexity, expense, and duration of continued litigation**

The first *Girsh* factor considers "the probable costs, in both time and money, of continued litigation." *In Re: Cendant Corporation Litigation,* 264 F.3d 201, 233-34 (3d Cir. 1992) (*Cendant II*) (internal quotation marks omitted). "Where the complexity, expense, and duration of litigation are significant, the Court will view this factor as favoring settlement." *Bredbenner*, 2011 WL 1344745, at *11. This factor undoubtedly weighs in favor of settlement.

Here, due to the factual and legal complexities involved in this case, continued litigation would have been rigorously contested by Defendant, and would necessarily be expensive and time-consuming. *See In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 812 (concluding that lengthy discovery and ardent opposition from the defendant with "a plethora of pretrial motions" were facts favoring settlements, which offer immediate benefits and avoid delay and expense). But for the parties agreeing to settle this matter, discovery would have moved forward at full speed, including comprehensive written discovery and depositions. Indeed, Plaintiffs had already served a comprehensive set of Interrogatories and Requests for Production of Documents (served March 26, 2018). The parties would have engaged in significant additional discovery, and briefed class certification, which would have likely included accompanying expert reports.

Additionally, the risks of substantial delay are palpable. As described above, although the case has already been vigorously litigated, substantial additional work and discovery would be required before the case would be ready to bring to trial. Post-trial motions and appeal would further delay resolution and increase costs. *Warfarin II*, 391 F.3d. at 536 ("it was inevitable that

post- trial motions and appeals would not only further prolong the litigation but also reduce the value of any recovery to the class").

Under all of the circumstances, a certain result now—rather than an uncertain result potentially years in the future—weighs in favor of approval of the Settlement. For these reasons, the first *Girsh* factor weighs in favor of final approval of the Settlement.

### (b)    The reaction of the class to the settlement

The second *Girsh* factor "attempts to gauge whether members of the class support the Settlement." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 318 (3d Cir. 1998) ("*Prudential II*"). As noted above, as of the date of this filing, there have been no objections to the settlement submitted by Class Members. Under *Girsh*, such a lack of objections favors approval of a class action settlement agreement.  A "paucity of protestors . . . militates in favor of the settlement." *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1314 (3d Cir. 1993); *see also Stoetzner v. U. S. Steel Corp.*, 897 F.2d 115, 119 (3d Cir. 1990) (objections by 29 members of a class comprised of 281 "strongly favors settlement"); *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 537 (D.N.J. 1997) (small number of negative responses to settlement favors approval) ("*Prudential I*").

Although some Class Members have made the decision to exclude themselves from this Settlement,[4] there are a sufficient number of remaining class members to easily satisfy numerosity and that warrant approving the Settlement. Under the circumstances, this relatively small group of Class Members should not prevent the overwhelming majority of the Class from reaping the benefits made available to them now under the Settlement.

---

[4] The names and apartment numbers of those class members who elected to opt out are attached as Exhibit C to the Mahan Declaration.

### (c)      The stage of the proceedings

The stage of the proceedings is another factor that courts consider in determining the fairness, reasonableness and adequacy of a settlement. *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d at 785. "This factor considers the degree of case development accomplished by counsel prior to settlement." *Bredbenner*, 2011 WL 1344745 at *12. Here, Plaintiffs filed a Complaint, briefed a motion to dismiss, filed a motion to appoint lead counsel, compiled and served initial disclosures and discovery, and engaged in confirmatory discovery. This Settlement was reached after both sides endured the rigors of hard-fought motion practice and litigation.

### (d)      The risks of establishing liability and damages

This factor should be considered to "examine what potential rewards (or downside) of litigation might have been had class counsel decided to litigate the claims rather than settle them." *Cendant II*, 264 F.3d at 237 (quoting *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 814). "The inquiry requires a balancing of the likelihood of success if the case were taken to trial against the benefits of immediate settlement." *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 89 (D.N.J. 2001).

In addition to liability, courts also consider risks associated with proving damages. In *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 256 (D. Del. 2002) ("*Warfarin I*"), *aff'd* 391 F.3d 516, 537 (3d Cir. 2004), the trial court found that the risk of establishing damages strongly favored settlement, observing that "[d]amages would likely be established at trial through 'a "battle of experts," with each side presenting its figures to the jury and with no guarantee whom the jury would believe.'" Similarly, in *Cendant II*, the Third Circuit reasoned that there was no compelling reason to think that "a jury confronted with competing expert

opinions" would accept the plaintiff's damages theory rather than that of the defendant, and thus the risk in establishing damages weighed in favor of approval of the settlement. 264 F.3d at 239.

Although Class Counsel believe that GameStop's liability in this case is clear,[5] there remain other issues in dispute, such as the applicable burden of proof for damages, amount of recoverable damages, and ability to recover punitive damages. Defendant has zealously defended against these issues, and would have continued to do so if the case proceeded. In addition, there are risks associated with prevailing on summary judgment. The Settlement, on the other hand, presents the Class with real relief now.

**(e)     The risks of certifying and maintaining a litigation class through trial**

Because the prospects for obtaining class certification have a great impact on the range of recovery one can expect to reap from the class action, *see In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 817, the Court must measure the likelihood of obtaining and maintaining a certified class if the action were to proceed to trial. *Girsh*, 521 F.2d at 157. There is always a risk that the Court would find this action not suitable for class certification, as seen in other courts that have denied class certification in these cases.  *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013) (denying class certification after determining that Rule 23(b)(3)'s predominance requirement was not satisfied); *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 U.S. Dist. LEXIS 140137, at *107 (N.D. Cal. Aug. 17, 2018) (". . . class certification was not guaranteed, in part because Plaintiffs had a scarcity of precedent to draw on. The parties represent that only

---

[5] GameStop does not concede and, by way of Settlement, in no way admits any liability in connection with the Data Breach.

11

one non-settlement data-breach class has been certified in federal court to date, and that case post-dates Plaintiffs' filing of their motion for class certification.").

### (f)  Defendant's ability to withstand greater judgment

Although there is no dispute that Defendant has ample resources, countless settlements have been approved where a settling defendant has had the ability to pay greater amounts, and the Third Circuit has noted that this fact alone does not weigh against settlement approval. *See, e.g., Warfarin II*, 391 F.3d at 538. This factor is generally neutral when the defendant's ability to pay greatly exceeds the potential liability, and was not a factor in settlement negotiations. *CertainTeed*, 269 F.R.D. at 489 ("because ability to pay was not an issue in the settlement negotiations, this factor is neutral"); *Bredbenner*, 2011 WL 1344745, at *15 ("courts in this district regularly find a settlement to be fair even though the defendant has the practical ability to pay greater amounts").

### (g)  Reasonableness of the settlement in light of the best possible recovery and all attendant risks of litigation

The final two *Girsh* factors assess the reasonableness of the settlement in light of the best possible recovery, and all the attendant risks of litigation. These factors, too, support approval of this Settlement and its benefits. As set forth herein, this Settlement offers real economic benefits to those Class Members who elect to participate in it. This factor supports the granting of final approval.

### 2.  The Relevant *Prudential* and *Baby Products* Factors Also Support Settlement.

The Third Circuit has articulated other factors that can be relevant to the evaluation of some, but not all, class settlements. In *Prudential II*, the Third Circuit identified several additional factors that "are illustrative of additional inquiries that in many instances will be

useful for a thoroughgoing analysis of a settlement's terms." *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010). Those additional factors are the following:

> [1] [T]he maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; [2] the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved—or likely to be achieved—for other claimants; [3] whether class or subclass members are accorded the right to opt out of the settlement; [4] whether any provisions for attorneys' fees are reasonable; and [5] whether the procedure for processing individual claims under the settlement is fair and reasonable.

*Prudential II*, 148 F.3d at 323. Although not all of the *Prudential* factors are relevant to approval of the proposed Settlement, those that are weigh in favor of final approval.

First, the underlying substantive issues in this case are mature. As discussed above, the parties briefed a motion to dismiss, which crystalized the claims that would be at issue going forward.  Second, all individual Settlement Class Members are being treated fairly. Third, as discussed above, Settlement Class Members were provided with robust notice and were provided with the opportunity to opt-out, which some Class Members did. Fourth, the fees requested are reasonable, as more fully discussed in Plaintiffs' fee petition. *See* Dkt. No. 47. Finally, the claims process is clearly set out in the Settlement and accompanying papers, and Settlement Class Members have ample time to seek assistance, if necessary, and to complete a Claim Package.

The Third Circuit added an additional factor in *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d. Cir. 2013), in which it examined the degree to which a proposed settlement provided a "direct benefit" to the class. *Id.* at 174; *see also McDonough v. Toys R. Us, Inc.*, 80 F. Supp. 3d 626, 650-51 (E.D. Pa. 2015) (discussing "*Baby Products* factor"). Here, Class Members that fill out a Claim Form and do not request exclusion receive a direct benefit from the

Settlement. For all the foregoing reasons, the proposed Settlement satisfies the factors articulated by the Third Circuit and should be approved as fair, reasonable, and adequate.

**B.     The Notice Program is Constitutionally Sound and Has Been Fully Implemented**

To protect the rights of absent members of the Class, the Court must ensure that all Class Members who would be bound by a class settlement are provided the best practicable notice. *See* FED. R. CIV. P. 23(e)(1)(B); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950).

The form and manner of Notice was negotiated and agreed upon by the Parties, approved by this Court, and meets these requirements. As detailed above and in the Mahan Declaration, the direct Notice program involved sending via U.S. Mail and e-mail the class notice and claim forms to everyone for whom contact information was available. The direct mail notice sent to all reasonably identifiable Class Members, supplemented by the other forms of notice, provided the best notice practical under the circumstances, giving Class Members a full and fair opportunity to consider the terms of the Settlement and make a fully informed decision as to whether to participate, object, or opt-out of the Settlement. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (noting that individual notice is preferred method where addresses of class members can be ascertained through reasonable effort). Therefore, the Notice fulfilled the requirements of due process and those of Rule 23(c)(2) of the Federal Rules of Civil Procedure.

**C.     The Settlement Class Should Be Certified**

Finally, the class should be certified for purposes of final approval. Class certification under Rule 23 has two primary components. First, the party seeking class certification must first

establish the four requirements of Rule 23(a): "(1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical . . . of the class'); and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class')." *Warfarin II*, 391 F.3d at 527. Second, the Court must find that the class fits within one of the three categories of class actions set forth in Rule 23(b). *In re Community Bank of No. Virginia*, 418 F.3d 277, 302 (3d Cir. 2005). In the present case, Plaintiffs seek certification under Rule 23(b)(3), "the customary vehicle for damage actions." *Id.* Rule 23(b)(3) requires that common questions "predominate over any questions affecting only individual members" and that class resolution be "superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 592-93 (1997).

As discussed in detail below, all the Rule 23 requirements for a settlement class are met here. The Court was correct in preliminarily certifying the Class for settlement purposes pursuant to Rules 23(a) and (b)(3), and nothing has changed to alter the propriety of that conclusion.

### 1. The Rule 23(a) Factors Are Met

As discussed below, Plaintiffs and the Class meet the requirements of Rule 23(a), which are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. *See Warfarin Sodium II,* 391 F.3d at 527.

### (a) Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is "impracticable." *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*, 149 F.R.D. 65, 73 (D.N.J. 1993). "Impracticable" does not mean impossible, "only that common sense suggests that it would be difficult or inconvenient to join all class members." *See Prudential I*, 962 F. Supp. at

510; *see also Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). The Class consists of thousands of Class Members, which is sufficient to meet this criterial. *Feret v. CoreStates Fin. Corp.*, No. 97-6759, 1998 U.S. Dist. LEXIS 12734, at *18-19 (E.D. Pa. Aug. 18, 1998) ("Indeed, classes with as few as 25 or 30 members have been certified by some courts.") (collecting cases).

**(b)**     **Commonality**

"Rule 23(a)(2)'s commonality element requires that the proposed class members share at least one question of fact or law in common with each other." *Warfarin II*, 391 F.3d at 527-28. "Commonality does not require perfect identity of questions of law or fact among all class members. Rather, even a single common issue will do." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015) (internal quotation marks omitted). Here, Plaintiffs submit that the Settlement Class Members share many common issues of law and fact. All of their claims relate to and arise from the same Data Breach. Commonality is satisfied for purposes of the settlement.

**(c)**     **Typicality**

In considering typicality under Rule 23(a)(3), the court must determine whether "the named plaintiffs['] individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 184 (3d Cir. 2001). Typicality does not require that all class members share identical claims. *Id.* So long as "the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is usually established regardless of factual differences." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. 2001).

The proposed Class Representatives are victims of the Data Breach and are alleged to have been impacted by and suffered damages a result of the Data Breach. They allege that they

16

have put forth the same injury as the other Class Members, caused by a uniform course of conduct. As such, the typicality requirement is satisfied.

### (d)     Adequacy

The adequacy requirement has two components intended to ensure that the absent class members interests are protected: (a) the named plaintiffs' interests must be sufficiently aligned with the interests of the class, and (b) the plaintiffs' counsel must be qualified to represent the class. *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 800. Here, the requirements for adequacy are satisfied.

As for the first component, the Court must determine whether "the representatives' interests conflict with those of the class." *Johnston*, 265 F.3d at 185. Plaintiffs submit that there is no conflict between the proposed Class Representatives and the Class, because, as with all members of the Class, Plaintiffs seek to recover losses stemming from the Data Breach which jeopardized their sensitive financial information tendered to Defendant in conjunction with making purchases on its website. Plaintiffs have no interests that are in conflict with the Class they seek to represent and their alleged injuries are identical to those suffered by Settlement Class members. *See Amchem*, 521 U.S. at 625-27 (courts look at whether the representatives' interest are in any way antagonistic to or in conflict with those of the class members).

As far as the adequacy of counsel is concerned, the Class is represented by Chimicles & Tikellis LLP and Abington Cole + Ellery, law firms with national reputations in the class action field, as demonstrated by the firm resumes submitted in connection with the Motion for Preliminary Approval. Accordingly, both prongs of the adequacy inquiry are satisfied.

17

### 2. The Rule 23(b)(3) Factors Are Met

In addition to meeting the requirements of Rule 23(a), the Class also must satisfy Rule 23(b)(3). Plaintiffs submit that the rule is satisfied here because questions of law or fact common to the Class Members predominate over any questions affecting only individual Class Members in light of the proposed Settlement, which eliminates any individual issues, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

### (a) Predominance

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." As the Supreme Court explained in *Amchem*, "[p]redominance is a test readily met in certain cases alleging consumer fraud . . . ." 521 U.S. at 625. "Common issues predominate when the focus is on the defendants' conduct and not on the conduct of the individual class members." *In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 187 (D.N.J. 2003).

Plaintiffs submit that the key questions posed in this case—all of which relate to losses stemming from the Data Breach—are common ones. If resolved in one stroke, those issues would substantially advance the litigation. *See, e.g., In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 859 (6th Cir. 2013).

### (b) Superiority

Rule 23(b)(3) also requires that class resolution be "superior to other available methods for fairly and efficiently adjudicating the controversy." The following factors are relevant to the superiority inquiry:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or

undesirability of concentrating the litigation of the claims in the particular forum;
(D) the likely difficulties in managing a class action.

*Id.*; *see also Danvers Motor Co., Inc. v. Ford Motor Co.*, 543 F.3d 141, 149 (3d Cir. 2008).

The superiority inquiry is simplified in the settlement context because the Court need not inquire whether the case, if tried, would pose intractable management problems, for the purpose of the settlement is to not have a trial. *Amchem*, 521 U.S. at 620.

Here, Plaintiffs submit that a class action settlement is the superior method of resolving the claims of Class Members who have not elected to exclude themselves from the Settlement.  It ensures that the claims of the Class Members will be resolved efficiently and without further delay.  *See O'Brien v. Brain Research Labs, LLC*, No. 12-204, 2012 WL 3242365, at *9 (D.N.J. Aug. 9, 2012) (finding superiority because, *inter alia*, "denying certification would require each consumer to file suit individually at the expense of judicial economy"). By contrast, future individualized litigation carries with it great uncertainty, risk, and costs, and provides no guaranty that injured plaintiffs will obtain necessary and timely compensatory relief at the conclusion of the litigation. *See Varacallo*, 226 F.R.D. at 234 ("Without question, class adjudication of this matter will achieve an appreciable savings of effort, time and expense, and will promote uniformity of decision on the issues resolved and to which the parties will be bound.").

## IV.   CONCLUSION

Because the Settlement that Plaintiffs reached with Defendant is fair, reasonable, and adequate, and because the Settlement Class meets all applicable requirements of Rule 23(a) and 23(b)(3), Plaintiffs respectfully submit that certification of the class and final approval of the Settlement is warranted. A proposed Order granting this relief, and dismissing the matter with prejudice, is submitted herewith.

Dated: December 3, 2018

Respectfully submitted,

By:   */s/ Robert J. Kriner, Jr.*

Robert J. Kriner, Jr. (DE Bar No. 2546)
**CHIMICLES & TIKELLIS LLP**
2711 Centerville Road, Suite 201
Wilmington, DE 19808
(302) 656-2500
rjk@chimicles.com

and

Benjamin F. Johns (*pro hac vice*)
Andrew W. Ferich (*pro hac vice*)
**CHIMICLES & TIKELLIS LLP**
361 W. Lancaster Avenue
Haverford, Pennsylvania 19041
Tel: (610) 642-8500
bfj@chimicles.com
awf@chimicles.com

Cornelius P. Dukelow
Oklahoma Bar No. 19086
**ABINGTON COLE + ELLERY**
320 South Boston Avenue, Suite 1130
Tulsa, Oklahoma 74103
918.588.3400 (*telephone & facsimile*)
cdukelow@abingtonlaw.com
www.abingtonlaw.com

*Co-Lead Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, Robert J. Kriner, Jr., hereby certify that the foregoing PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT was filed on this 3rd day of December 2018 using the Court's CM/ECF system, thereby electronically serving it on all counsel of record in this case.


                                                    */s/ Robert J. Kriner, Jr.*
                                                    Robert J. Kriner, Jr.